# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA
# PITTSBURGH DIVISION

| | | |
|---|---|---|
| **TEJON ADAMS**, individually and on behalf of all others similarly situated, | § § § § | Docket No. _____ |
| Plaintiff, | § § | |
| v. | § § | **JURY TRIAL DEMANDED** |
| **EQT CORPORATION**, | § § § | **CLASS/COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)/** |
| Defendant. | § § | **FED. R. CIV. P. 23** |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### I. SUMMARY

1. Tejon Adams ("Adams") brings this lawsuit to recover unpaid overtime wages and other damages from EQT Corporation ("EQT") under the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act, 43 Pa. Stat. Ann. § 333.104 ("PMWA").

2. Adams and the other workers like him regularly worked for EQT in excess of forty (40) hours each week.

3. But these workers never received overtime for hours worked in excess of forty (40) hours in a single workweek.

4. Instead of paying overtime as required by the FLSA and the PMWA, EQT improperly classified Adams and those similarly situated workers as independent contractors and paid them a daily rate with no overtime compensation.

5. This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### II. JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331

because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7. The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d).

8. The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

10. Adams and other Putative Class Members performed work related tasks for EQT in this District and Division.

### III. THE PARTIES

11. Adams worked for EQT as a Completions Consultant from approximately July 2014 until February 2015.

12. Throughout his employment with EQT, he was paid a day-rate with no overtime compensation and was classified as an independent contractor.

13. His consent to be a party Adams is attached as <u>Exhibit A</u>.

14. Adams brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by EQT's day-rate system. EQT paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

15. The class of similarly situated employees or potential class members sought to be certified is defined as follows:

> **All current and former day rate independent contractors working for, or on behalf of, ETQ during the last three years.**

16. Adams also seeks class certification of such a class under FED. R. CIV. P. 23 under the PMWA.

17. Defendant **EQT Corporation**, one of the largest natural gas producers in the Appalachian Basin, maintains its corporate headquarters at EQT Plaza, 625 Liberty Avenue, Suite 1700, Pittsburgh, PA 15222.

## IV. COVERAGE UNDER THE FLSA

18. At all times hereinafter mentioned, EQT has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

19. At all times hereinafter mentioned, EQT has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

20. At all times hereinafter mentioned, EQT has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce by any person and in that EQT has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

21. At all times hereinafter mentioned, Adams and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

22. As will be shown through this litigation, EQT treated Adams (and indeed all of its workers that it classified as independent contractors and paid a daily rate to without overtime compensation) as employees and uniformly dictated the pay practices Adamss and its other workers including its so-called "independent contractors".

23. EQT's misclassification of Adamss as independent contractors does not alter their status as employees for purposes of the FLSA or the PMWA.

## V. FACTS

24. EQT is an oil and natural gas exploration and production company operating worldwide and throughout the United States, including in Pennsylvania.

25. To provide services to many of its customers, EQT contracts with certain companies to provide it with personnel to perform the necessary work.

26. Many of these individuals worked for EQT on a day-rate basis, were misclassified as independent contractors, and make up the proposed Putative Class. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

27. EQT classified all of these workers as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

28. For example, Adams worked for EQT as a Completions Consultant from approximately July 2014 until February 2015.

29. Throughout his employment with EQT, he was classified as an independent contractor and paid on a day-rate basis.

30. As a Completions Consultant, Adams's primary job duties included operating oilfield machinery, performing maintenance on the equipment used, and working with other oilfield employees to insert plugs, packers, and other blocking devices down well.

31. Adams worked well in excess of 40 hours each week while employed by EQT, often for weeks at time.

32. The work Adams performed was an essential party of EQT's core business.

33. During Adams's employment with EQT while he was classified as an independent contractor, EQT and/or the client it contracted with exercised control over all aspects of his job.

34. EQT did not require any substantial investment by Adams in order for him to perform the work required of him.

35. EQT determined Adams's opportunity for profit and loss. Adams was not required to possess any unique or specialized skillset (other than that maintained by all other employees in his respective position) to perform his job duties.

36. Adams worked for EQT as an independent contractor from approximately July 2014 until February 2015.

37. Indeed, EQT and/or the client it contracted with controlled all of the significant or meaningful aspects of the job duties performed by Adams.

38. EQT ordered the hours and locations Adams worked, tools used, and rates of pay received.

39. Even though Adams often worked away from EQT's offices without the presence of a direct supervisor employed by EQT, EQT still controlled all aspects of Adams's job activities by enforcing mandatory compliance with EQT's and/or its client's policies and procedures.

40. No real investment was required of Adams to perform his job.

41. More often than not, Adams utilized equipment provided by EQT and/or its clients to perform his job duties.

42. Adams did not provide the equipment he worked with on a daily basis.

43. EQT and/or its clients made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Adams worked.

44. Adams did not incur operating expenses like rent, payroll, marketing, and insurance.

45. Adams was economically dependent on EQT during his employment.

46. EQT set Adams's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for EQT.

47. EQT directly determined Adams's opportunity for profit and loss. Adams's earning opportunity was based on the number of days EQT scheduled him to work.

48. Very little skill, training, or initiative was required of Adams to perform his job duties.

49. The daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by EQT and/or its clients. Virtually every job function was pre-determined by EQT and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. The Putative Class Members were prohibited from varying their job duties outside of pre-determined parameters.

50. Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

51. The Putative Class Members did not have any supervisory or management duties.

52. Finally, for the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to servicing energy operations in the field.

53. Adams performed routine manual and technical labor duties that were largely dictated by EQT and/or its clients.

54. Adams was not employed by EQT on a project-by-project basis. In fact, while Adams was classified as an independent contractor, he was regularly on call for EQT and/or its clients and was expected to drop everything and work whenever needed.

55. All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

56. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

57. EQT's policy of failing to pay their independent contractors, including Adams, overtime violates the FLSA and PMWA because these workers are, for all purposes, employees performing non-exempt job duties.

58. Because Adams (and EQT's other independent contractors) was misclassified as an independent contractor by EQT, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

59. EQT's day-rate system violates the FLSA and the PMWA because Adams and those similarly situated did not receive any overtime pay for hours worked over 40 hours each week.

## VI. FLSA VIOLATIONS

60. As set forth herein, EQT has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of forty (40) hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

61. EQT knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. EQT's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

62. Accordingly, Adams and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## VII. PMWA Violations

63. Adams brings this claim under the PMWA as a Rule 23 class action.

64. The conduct alleged violates the PMWA (43 Pa. Stat. Ann. § 333.104).

65. At all relevant times, EQT was subject to the requirements of the PMWA.

66. At all relevant times, EQT employed Adams and each Class Member with Pennsylvania state law claims as an "employee" within the meaning of the PMWA.

67. The PMWA requires employers like EQT to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. Adams and each member of the Pennsylvania Class are entitled to overtime pay under the PMWA.

68. EQT had a policy and practice of misclassifying Adams and each member of the Pennsylvania class as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

69. Adams and each member of the Pennsylvania Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

70. Adams and each member of the Pennsylvania Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by EQT, as provided by the PMWA.

## VIII. Class and Collective Action Allegations

71. Adams incorporates all previous paragraphs and alleges that the illegal pay practices EQT imposed on Adams were likewise imposed on the members of the Classes.

72. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the state wage laws of Pennsylvania.

73. Numerous other individuals who worked with Adams indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

74. Based on his experiences and tenure with EQT, Adams is aware that EQT's illegal practices were imposed on the members of the Classes.

75. The members of the Classes were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

76. EQT's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the members of the Classes.

77. Adams's experiences are therefore typical of the experiences of the members of the Classes.

78. The specific job titles or precise job locations of the various members of the Classes do not prevent class or collective treatment.

79. Adams has no interests contrary to, or in conflict with, the members of the Classes. Like each member of the Classes, Adams has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

80. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

81. Absent this action, many members of the Classes likely will not obtain redress of their injuries and EQT will reap the unjust benefits of violating the FLSA and applicable state labor laws.

82. Furthermore, even if some of the members of the Classes could afford individual litigation against EQT, it would be unduly burdensome to the judicial system.

83. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

84. The questions of law and fact common to each of the members of the Classes predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

> a. Whether EQT employed the members of the Classes within the meaning of the applicable state and federal statutes, including the FLSA and the PMWA;
>
> b. Whether the members of the Classes were improperly misclassified as independent contractors;
>
> c. Whether EQT's decision to classify the members of the Classes as independent contractors was made in good faith;
>
> d. Whether EQT's decision to not pay time and a half for overtime to the members of the Classes was made in good faith;
>
> e. Whether EQT's violation of the FLSA and the PMWA was willful; and
>
> f. Whether EQT's illegal pay practices were applied uniformly across the nation to all members of the Classes.

85. Adams's claims are typical of the claims of the members of the Classes. Adams and the members of the Classes sustained damages arising out of EQT's illegal and uniform employment policy.

86. Adams knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

87. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## IX. Jury Demand

88. Adams demands a trial by jury.

## X. Relief Sought

89. WHEREFORE, Adams prays for judgment against EQT as follows:

   a. An Order designating the Potential Putative FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b. For an Order pursuant to Section 16(b) of the FLSA finding EQT liable for unpaid back wages due to Adams and the Potential Putative FLSA Class for liquidated damages equal in amount to their unpaid compensation;

   c. For an Order designating the state law classes as class actions pursuant to Fed. R. Civ. P. 23;

   d. For an Order appointing Adams and his counsel as Class Counsel to represent the interests of the both the federal and state law classes;

   e. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

   f. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Joshua P. Geist*
Joshua P. Geist
PA. I.D. No. 85745
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Tel: (412) 766-1455
Fax: (412)766-0300
josh@goodrichandgeist.com

**AND**

Michael A. Josephson
Texas Bar No. 24014780
 (*Pending Pro Hac Vice*)
**Andrew W. Dunlap**
Texas Bar No. 24078444
(*Pending Pro Hac Vice*)
**Lindsay R. Itkin**
Texas Bar No. 24068647
(*Pending Pro Hac Vice*)
**Jessica M. Bresler**
Texas Bar No. 24090008
(*Pending Pro Hac Vice*)
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
litkin@mybackwages.com
jbresler@mybackwages.com

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**